(No. 74-380 and 74-381—

PHILLIP VAUGHN, ADMINISTRATOR, ET AL., Claimant, *vs.* STATE OF ILLINOIS, and DEPARTMENT OF TRANSPORTATION, Respondent.

*Opinion filed May 31, 1977.*

WINSTEIN, KAVENSKY, WALLACE & DOUGHTY, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; HOWARD FELDMAN, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This claim arises out of an unfortunate incident which occurred on June 30, 1973. On that date, Philip Vaughn, his wife, Marilyn, and his son, Robert, were in a boat on the Rock River.

Philip Vaughn had purchased the boat and outboard motor a few days earlier and had never had it in the water until the day in question.

Mr. Vaughn was raised in Silvis, Illinois, and knew there was a dam by the name of Sears Dam but did not know exactly where it was.

He had placed the boat in the water several miles upstream from the dam. He testified he had never looked at the map or chart of the river and was not too well acquainted with this particular area although he had fished it at various times.

After putting the boat in the river, they started downstream, and along the way he made several adjustments to the propeller to try and get the pitch he desired. When they were a short distance above the dam, he noticed that things looked different and something was wrong.

At about this time, the boat's motor stopped and he was unable to get it started again. He dropped anchor but the current was so swift, it would not hold the boat. The boat began drifting toward the dam and he tried to paddle it toward the shore without any success.

He then jumped overboard and tried to swim and push the boat toward the shore but was unable to do so because of the swift current. He testified the river was higher than usual, and this probably accelerated the flow of the water. He then got back into the boat and when he saw they were getting close to the dam, they all jumped into the water. He held onto his wife and child,

both of whom wore life preservers but could not swim, and attempted to get them to shore which was approximately 40 feet away; but because of the current, they were swept over the dam. His wife and child were separated from him and, unfortunately, they both drowned. He was pulled from the river, and it was some time before the bodies of his wife and child were found.

Claimant at this time was living in Orion, Illinois, which is not too far from the place where the accident occurred.

Claimant testified that at no place between the place where he put the boat in the river and the dam were there any buoys or signs of any kind of warning that there was a dam in the river. There were no cables, ropes or anything of that nature stretched across the river upstream from the dam.

Claimant charges the State with the following acts of negligence:

(a) Failed to warn or advise boaters of the dangers of said dam or spillway by placing signs, markers, or buoys upstream from said dam or spillway.

(b) Failed to provide safety devices at or about said dam or spillway in order to protect boaters and others from being swept over said dam or spillway.

(c) Failed to provide rescue equipment at or about said dam or spillway for the use of boaters or others who have been swept over said dam or spillway.

The Court of Claims Act, § 8(d), Ill.Rev.Stat., Ch. 37, §439.8(d), provides that this Court shall have jurisdiction to hear and determine matters sounding in tort as follows:

(d) All claims against the State for damages in cases sounding in tort *if a like cause of action would lie against a private person or corporation in a civil suit. . . .*

This language was incorporated into the Act by P.A.77-2089, Sec. 1, effective October 2, 1972, and im-

poses a somewhat different test for the State's liability in tort from the statutory language in force prior to October 1, 1972, which reads as follows:

(d) All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants would be entitled to redress against the State of Illinois, in a civil action, *if the State were suable*. . . .

If under the current enactment the State can be sued in tort, if a like cause of action would lie against a private person or corporation in a civil suit, then it should have available to it the same defenses that would be available to a private person or corporation.

For that reason, the Recreational Use of Land and Water Areas Act, Ill.Rev.Stat., Ch. 70, § 31-37, enacted in 1965, disposes of the issues in this case. Below are pertinent sections of the statute:

33. Duty of care or warning of dangerous condition. Except as specifically recognized or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

34. Effect of invitation or permission. Except as specifically recognized by or provided in Section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of due care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such person or any other person who enters upon the land.

36. Willful or malicious acts—Injury suffered by persons paying admission. Nothing in this Act limits in any way liability which otherwise exists:

(a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof. . .

There can be no recovery in tort unless there is a duty on the part of the Respondent to exercise care.

Section 33 of the above cited statute expressly absolves an owner of land of any duty of care towards a person using the land for recreational purposes, except the duty to willfully or maliciously fail to guard against or warn against a dangerous condition. There is a further qualification that liability is not limited where the owner charges for the recreational use. Here there is no allegation or proof of any willful or malicious misconduct on the part of the State. Nor is there any allegation or proof of charge for boating on the river.

Section 32 of the statute defines land to mean water or watercourses, and defines recreational purposes to include boating.

If at the time of the occurrence in this case the Sears Water Power Company had still owned the dam, it would appear that no action would lie against the company. Since no action would lie against a private person or corporation, no action will lie against the State.

This is a case of first impression in this Court. Further to date the Recreational Use of Land and Waters Act has not been passed upon by the Illinois Supreme Court or any of the Appellate Courts of Illinois.

The language of the statute appears clear. When read with the language of Section 8(d) of the Court of Claims Act, it is manifest that no cause of action can lie against the State of Illinois for Claimant's injuries.

For the above reason, this claim is denied.